NOT DESIGNATED FOR PUBLICATION

No. 125,421

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

KHALIL SHAKOR WARD,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; ERIC WILLIAMS, judge. Submitted without oral argument. Opinion filed November 9, 2023. Affirmed in part, reversed in part, and remanded with directions.

*Kasper Schirer*, of Kansas Appellate Defender Office, for appellant.

*Julie A. Koon*, assistant district attorney, *Marc Bennett*, district attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before GREEN, P.J., SCHROEDER and CLINE, JJ.

PER CURIAM: The district court revoked Khalil Shakor Ward's probation and ordered that he serve his original sentence based on Ward's commission of new crimes. On appeal, Ward challenges the district court's jail credit assignment and its refusal to modify his sentence on the revocation of his probation.

Ward's argument—that the district court abused its discretion when it refused to modify its revocation of his probation—is unconvincing because Ward cannot show that the district court's decision to impose his original sentence without modification was

1

unreasonable. We affirm. Nevertheless, Ward's jail credit argument is persuasive because under the facts of this case one could argue that he had a right to jail credit for time served. Thus, we reverse the district court's award of jail credit and remand this case to the district court to account for each day Ward was incarcerated pending the disposition in case No. 18CR2153. We affirm in part, reverse in part, and remand with directions.

FACTS

While serving probation in 2018, the State charged Ward with five drug-related crimes in a new case, 18CR2153. Ward entered an *Alford* plea to possession of marijuana with the intent to distribute, proceeds derived from violations of drug laws, and possession of controlled substances. See *North Carolina v. Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).

Before sentencing, Ward moved for a dispositional departure to probation. The district court considered Ward's motion at the sentencing hearing, where it also heard arguments on Ward's probation violation in a separate case, No. 17CR1753. In case 17CR1753, the district court revoked and reinstated Ward's probation, ordered that he serve a quick-dip, awarded jail credit, and ordered Ward to complete the community corrections residential program. Turning to case 18CR2153, the district court sentenced Ward to 68 months' imprisonment but granted Ward's motion for a dispositional departure and ordered that he serve 36 months' probation.

Three months later, Ward admitted to violating the terms of his probation at a violation hearing. The district court ordered that Ward serve a 120-day sanction in both cases and ordered that his probation be revoked and reinstated in both cases on completion of the sanctions. The district court also extended Ward's probation in case 17CR1753 for 18 months.

2

Seven months after his first violation hearing, a warrant alleged Ward violated the terms of his probation by committing new offenses. And a couple months later, a second warrant alleged Ward violated the terms of his probation by failing to contact his intensive supervision officer (ISO).

The district court held an evidentiary hearing on the alleged violations contained in both warrants. The State's evidence showed that a law enforcement officer stopped Ward's vehicle because Ward was not wearing a seatbelt. As the officer approached Ward's vehicle, he smelled the odor of marijuana from the open window. Ward was "very polite as well as compliant" and "very honest from the beginning." The officer confronted Ward about the marijuana smell, and Ward admitted to smoking marijuana in the vehicle "recently." Ward also admitted to having a firearm in the vehicle. On these admissions, the officer searched Ward's vehicle and located a "fairly big bag" of oxycodone pills, 3.5 grams of marijuana, drug paraphernalia, and a handgun.

In his defense, Ward proffered evidence showing that he was shot eight times in June 2020 when he attempted to pick up his son from the child's mother. One of his doctors testified that the gunshot wounds did damage to multiple organs. And Ward testified that he was in a coma for "[t]hree weeks or a month" after the shooting.

Ward also testified to receiving death threats from the mother of his son after he had awakened from his coma and was released from the hospital. A screenshot of a message making such threat was admitted into evidence. And photos depicting Ward as "a rat" were "posted all over Facebook" and "spread out all over town." Ward testified that he believed, and continued to believe, the threats against his life were valid.

Ward testified that he was prescribed oxycodone after the shooting to manage his pain. And his social worker testified that Ward was diagnosed with posttraumatic stress disorder with a panic disorder as a result of the shooting. Ward's social worker also

testified that he "appeared to be functioning at a heightened state of fight or flight, [and] this likely influenced his decision to carry a firearm." In his testimony, Ward agreed and stated that he felt the need to defend himself considering the threats made against his life.

Relevant to the issues on appeal, Ward's ISO also testified at the evidentiary hearing. Notably, she testified to currently supervising Ward on solely the 18CR2153 case—"[t]he 17 CR case has closed." And while she testified to multiple failures to report, Ward's ISO also testified that he was amenable to probation.

The district court found that the State met its burden of proving that Ward had violated his probation. The parties then presented arguments on disposition. The State argued that Ward's probation should be revoked and that he should serve his underlying sentence. Ward, however, requested the reinstatement of his probation, arguing that he was meeting the terms of his probation and contending that he had a need to defend himself. Alternatively, Ward requested the district court impose a modified sentence, arguing that it "would be a horrible injustice" to send him to prison "after everything he has been through."

After noting that "[t]his is a difficult case," the district court revoked Ward's probation based on the commission of new crimes. The district court denied Ward's request for a modified sentence and imposed the original underlying 68 months' imprisonment term. The district court awarded two days of jail credit toward his sentence.

Ward appeals.

ANALYSIS

*Did the district court err in awarding jail credit?*

In his first issue on appeal, Ward argues that the district court erred in awarding jail credit when it assigned 282 days of jail credit to his previous case, 17CR1753, rather than the instant case. The State argues that Ward did not preserve this claim for appellate review, or alternatively, Ward failed to show that the assignment of the 282 days was legally required.

*Ward did not preserve this claim for appellate review.*

Ward admits that he failed to object to the assignment of jail credits at sentencing. Generally, issues not raised before the district court cannot be raised on appeal. See *State v. Kelly*, 298 Kan. 965, 971, 318 P.3d 987 (2014). Even so, he contends that this court should review his claim on multiple grounds.

First, he contends that we can reach this issue because it meets two exceptions to the general rule against raising new issues for the first time on appeal. See *State v. Johnson*, 309 Kan. 992, 995, 441 P.3d 1036 (2019) (delineating exceptions). Ward contends that his newly asserted theory involves only a question of law arising out of proved or admitted facts. He also contends that consideration of his new theory is necessary to prevent the denial his fundamental right to liberty. Second, he contends that we should correct the jail credit award as a clerical error. And third, he argues that we should correct the jail credit as an illegal sentence.

The State argues that no exception should apply because the issue does not arise out of proved or admitted facts. Our Supreme Court has warned, "[a]n appellate court abuses its discretion when invoking an exception to the general rule against addressing an issue for the first time on appeal if consideration of the unpreserved issue would require

the court to make factual findings." *State v. Allen*, 314 Kan. 280, Syl. ¶ 5, 497 P.3d 566 (2021).

The State does not benefit us with a defense against Ward's arguments contending that we should correct his jail credit as a clerical error or illegal sentence. Yet, in neither case are the arguments sound.

The weight of Ward's argument cuts against his suggestion that the district court's action of assigning jail credit was a "[c]lerical mistake" that permits correction at any time under K.S.A. 22-3504(b). See K.S.A. 2022 Supp. 22-3504(b) ("Clerical mistakes in judgments, orders or other parts of the record and errors in the record arising from oversight or omission may be corrected by the court at any time."). Our Supreme Court has defined clerical mistake to include "'typographical errors, incorrect statute numbers, failure to include the statute number, failure to state additional true matter, formal or clerical errors and entries concerning matters of procedure.'" *State v. Bailey*, 306 Kan. 393, 398, 394 P.3d 831 (2017) (quoting *State v. Thomas*, 239 Kan. 457, 460, 720 P.2d 1059 [1986]).

Notably, our Supreme Court has "repeatedly denied criminal defendants relief when they request a nunc pro tunc order [under K.S.A. 22-3504(b)] to correct a lower court's substantive or merits determination." *State v. Smith*, 309 Kan. 977, 987, 441 P.3d 1041 (2019). In *Smith*, our Supreme Court affirmed this court's finding that "'Smith's motion requests almost 18 months of additional jail credit, and he makes no claim that his failure to receive the credit was the result of a clerical error.'" 309 Kan. at 988 (quoting *State v. Smith*, No. 113,828, 2016 WL 2609643, at *3 [Kan. App. 2016] [unpublished opinion], *disapproved in part on other grounds by Smith*, 309 Kan. at 983-86). The *Smith* court reasoned a criminal defendant must allege a factual basis to support an allegation of clerical error under K.S.A. 22-3504(b). 309 Kan. at 988.

Like the defendant in *Smith*, Ward makes no attempt to allege a factual basis supporting his allegation of clerical error. Thus, his clerical error argument lacks factual support in the record.

Our Supreme Court has also found that a jail credit challenge does not constitute an illegal sentence claim. See *State v. Lofton*, 272 Kan. 216, Syl. ¶ 1, 32 P.3d 711 (2001) ("A claim that the amount of jail time credited to a sentence was improperly computed does not constitute a claim that the sentence itself was illegal within the purview of K.S.A. 22-3504(1)."); *State v. Woods*, No. 124,702, 2022 WL 17729947, at *2 (Kan. App. 2022) (unpublished opinion) ("[T]o the extent that Woods' motion sought to receive jail credit, the district court correctly found that a motion to correct illegal sentence under K.S.A. 2021 Supp. 22-3504 cannot be used to resolve a jail credit issue.").

We are duty bound to follow our Supreme Court precedent unless there is some indication that the Supreme Court is departing from its previous position. *State v. Rodriguez*, 305 Kan. 1139, 1144, 390 P.3d 903 (2017). Acknowledging this rule, Ward contends that there is some indication the Supreme Court is departing from its position on considering jail credit issues in illegal sentence claims. But while Ward is correct in arguing that Chief Justice Marla Luckert disagreed with the panel's holding in *Smith*, her dissent on that issue does not afford a sound basis for the departure that Ward suggests. Rather, Chief Justice Luckert briefly suggests that such argument could be made, given *Lofton* and its progeny were decided before the effective date of the Kansas Sentencing Guidelines Act. *Smith*, 309 Kan. at 990-91 (Luckert, C.J., concurring in part and dissenting in part).

Nevertheless, even if we were to assume that this argument could be successful, Ward makes no attempt to actually argue that his sentence was illegal by applying the appropriate legal standards. He provides no legal analysis supporting an argument that an issue challenging jail credit awards fits the definition of illegal sentence under K.S.A.

2022 Supp. 22-3504, nor does he provide any argument showing why his position is sound in the face of contrary authority. See *State v. Meggerson*, 312 Kan. 238, 246, 474 P.3d 761 (2020). He simply argues that the improper assignment of his jail credit resulted in an illegal sentence because the jail credit award did not conform to the applicable statutory provisions.

Ward's argument, however, contending that his claim meets an exception to the general rule against raising new issues on appeal is more persuasive.

Ward's argument relies on the record showing that he completed his probation in case 17CR1753 before the date the district court awarded the 282 days of jail credit to that case. This fact is necessary for his argument because he contends that the district court lost jurisdiction to award jail credit in case 17CR1753 whenever his probation was completed. And without statutory authority to assign the 282 days of jail credit to case 17CR1753, the 282 days must be assigned to the instant case to avoid unawarded "'dead time.'" Ward's argument has persuasive weight.

"[A] 'decision to review an unpreserved claim under an exception is a prudential one.' Even if an exception may apply, we are under no obligation to review the claim. [Citation omitted.]" *State v. Rhoiney*, 314 Kan. 497, 500, 501 P.3d 368 (2021).

Thus, because we have discretion as to whether to consider Ward's unpreserved claim on this issue, we will exercise our discretion and consider this issue for the following reason: that consideration of this issue is necessary to prevent the denial of Ward's fundamental right to liberty. But to grant Ward's relief, Ward would need to show that he had completed his probation in case 17CR1753, thereby divesting the district court of jurisdiction and the statutory authority to award jail credit in that case.

8

Ward argues that it is "apparent in both the procedural history of the case, and in the testimony of [his] probation officer" that he completed his probation in case 17CR1753. He explains that in January 2019, he was serving probation in case 17CR1753 and in case 18CR2153. The transcript of the violation hearing from January 24, 2019, supports this assertion. At the same hearing, the district court extended Ward's probation in case 17CR1753 for 18 months from the date of the hearing. He contends that the record for this case, 18CR2153, "documents no alleged probation violations until August of 2021—more than a year *after* the case in 17 CR 1753 probation would have expired." Most persuasively, Ward points to the testimony of his probation officer, Dana Loyd, at the July 18, 2022 probation violation hearing where Loyd testified that she supervised him on both cases, but "[t]he 17 CR case has closed."

Loyd's testimony is the only evidence in the record supporting Ward's claim that he completed his probation in case 17CR1753 before the State's motion to revoke his probation in case 18CR2153. To reach the merits of his argument, we would need to assume that Ward completed his probation in case 17CR1753 based solely on Loyd's testimony. Yet again, the district court did not make this factual finding on the record. And apart from Loyd's testimony, the record is silent as to the date when Ward completed his probation in case 17CR1753. And if making factual findings is required to invoke an exception to the general rule against raising new issues for the first time on appeal, then we would abuse our discretion in doing so. See *Allen*, 314 Kan. 280, Syl. ¶ 5.

Nevertheless, if we were to assume for argument purposes only that Ward had completed his probation in case 17CR1753 before the State's motion to revoke his probation in case 18CR2153, his argument would be sound.

Kansas law provides that when a district court imposes a sentence of confinement, the defendant must receive credit for any time the defendant was incarcerated pending disposition of the case. K.S.A. 2022 Supp. 21-6615(a). The statute also provides that

when a term of probation is revoked and the defendant is sentenced to confinement, the defendant must receive credit for time "spent in a residential facility while on probation, assignment to a conservation camp or assignment to community correctional residential services program." K.S.A. 2022 Supp. 21-6615(b).

Our Supreme Court has interpreted this statutory language to mean "a defendant is entitled only to credit for the time held in custody solely on account of, or as a direct result of, those charges for which he is now being sentenced." *State v. Calderon*, 233 Kan. 87, 98, 661 P.2d 781 (1983) (citing *Campbell v. State*, 223 Kan. 528, 530-31, 575 P.2d 524 [1978]). A defendant is not entitled to credit on a sentence for time spent in jail on other, distinct, and wholly unrelated charges. *Smith*, 309 Kan. at 981. Thus, if a defendant is entitled to jail time credit in one case, he or she is not entitled to credit for the same jail time in any other case. See *State v. Prebble*, 37 Kan. App. 2d 327, 332-33, 152 P.3d 1245 (2007).

Nevertheless, our Supreme Court has recently reconsidered its holding in *Campbell*. And Ward has filed a notice of additional authority, under Supreme Court Rule 6.09(a)(2) (Kan. S. Ct. R. at 40), explaining that the *Campbell* rule limiting jail credit to a defendant of only "credit for the time held in custody solely on account of, or as a direct result of, those charges for which he is now being sentenced" has now been overruled in *State v. Hopkins*, 317 Kan. ___, 2023 WL 6933634, at *4-5 (2023). See *Calderon*, 233 Kan. at 98.

Here, the State's argument relies on the previous *Campbell* rule—that Ward is not entitled to jail credit because he had another case (17CR1753) pending against him while he was in jail. For example, when the district court revoked Ward's probation in case 18CR2153 and ordered that he serve his underlying sentence, the State proffered that Ward had "jail credit of [282] days on—which is identified as mostly being applied to the 17 CR 1753 case, and two days of credit on the 18 CR 2153 case. This was determined

on July 11th of 2022." In response, Ward's trial counsel immediately clarified: "So to answer your question, two days, Judge." These figures match the credits reflected in the probation revocation journal entry.

Thus, as our Supreme Court pointed out in *Hopkins*, under the former interpretation of K.S.A. 2022 Supp. 21-6615(a), a court would have had to closely consider each of the other charges against Hopkins to determine how much credit, if any, could be awarded. 2023 WL 6933634, at *5. Nevertheless, if we apply our Supreme Court's recently updated rule in *Hopkins*, we simply conclude that because Ward spent 282 days in jail while his case was pending, Ward must be awarded 282 days of jail credit against his 68 months' imprisonment sentence in his 18CR2153 case.

*Did the district court abuse its discretion in imposing Ward's original sentencing without modification?*

In his second issue on appeal, Ward contends that the district court abused its discretion when it imposed his original sentence on the revocation of his probation. Notably, Ward does not challenge the district court's decision to revoke his probation. See *State v. Davis*, 313 Kan. 244, 248, 485 P.3d 174 (2021) (issue not briefed is deemed waived or abandoned). Rather, he contends that the district court abused its discretion when it ordered that he serve the original sentence without modification. The State argues that the district court made no legal error or factual error when it imposed Ward's original sentence without modification, and that refusing to modify his sentence was reasonable.

On revocation of probation, a district court may impose the original prison sentence or modify the original sentence and impose any lesser sentence. *State v. Weekes*, 308 Kan. 1245, 1247, 427 P.3d 861 (2018); see K.S.A. 2022 Supp. 22-3716(c)(1)(C). Thus, at a probation revocation hearing, a district court has jurisdiction to entertain a motion for sentence modification. 308 Kan. at 1248. "After revoking a criminal

11

defendant's probation, a district judge may choose to sentence anew, even if some component of the original sentence was illegal because it failed to match a statutory minimum. In the alternative, a judge may simply require the defendant to serve the original sentence." *State v. Sandoval*, 308 Kan. 960, Syl., 425 P.3d 365 (2018).

Appellate courts review a district court's decision of whether to impose a lesser sentence under an abuse of discretion standard. *State v. Reeves*, 54 Kan. App. 2d 644, 648, 403 P.3d 655 (2017). A judicial action constitutes an abuse of discretion if (1) it is arbitrary, fanciful, or unreasonable; (2) it is based on an error of law; or (3) it is based on an error of fact. *State v. Levy*, 313 Kan. 232, 237, 485 P.3d 605 (2021). As the party asserting the district court abused its discretion, Ward bears the burden of showing such abuse of discretion. *State v. Crosby*, 312 Kan. 630, 635, 479 P.3d 167 (2021).

Interestingly, Ward did not argue that the district court made an error of fact in his initial briefing to this court. He simply argues that the district court's decision to impose his original sentence without modification was unreasonable. Yet, in his reply brief, Ward argues that the district court abused its discretion because it relied on an error of fact. His reply brief contends the following:

> "The State argues that the district court's decision to revoke [Ward's] probation and impose his original sentence 'was not . . . the result of errors of law or fact.' . . . But— as the State points out—the court believed that [Ward] 'had committed the crimes in the instant case while being on probation in 17 CR 1753.' . . . This is not the case."

Ward goes on to restate the facts showing that Ward was not serving probation in case 17CR1753 when he committed the crimes in case 18CR2153, as the district court found. As he argues, the underlying offenses in case 18CR2153 took place on February 16, 2017. Nevertheless, he was not convicted of the crimes in case 17CR1753

until May 7, 2017. The district court noted as much in its joint probation violation/sentencing hearing held on October 17, 2018:

> "THE COURT: What I am looking at then is he pled guilty in 17 CR 1753 on May 7th of 2017.
> "[Defense counsel]: We actually had a trial on that, Judge.
> "THE COURT: That is correct. That was May 7, 2017. The new case was an offense that occurred in February of 2017, so it was before the jury verdict in the other case.
> "[Defense counsel]: Exactly, Judge."

As a result, Ward argues persuasively that the district court made an error of fact when it found he was on probation in case 17CR1753 when he committed the offenses in case 18CR2153. Indeed, the district court findings stated: "Additionally, this case was committed while you were on probation in case 17 CR 1753. One of the basis for the violations in that case was the new case, this 18 CR case."

But while this argument is persuasive, Ward may be improperly raising it for the first time in his reply brief. Kansas Supreme Court Rule 6.05 (2023 Kan. S. Ct. R. at 38) provides that a reply brief is reserved for responding to new material contained in the appellee's brief. "An appellant may not raise new issues in a reply brief." *State v. McCullough*, 293 Kan. 970, 984, 270 P.3d 1142 (2012).

In this vein, this would appear to be the first time Ward is raising this argument, generally. See *Kelly*, 298 Kan. at 971. Ward did not object to the district court's reliance on this factual error when it revoked his probation. And his counsel did not make such argument when counsel requested the district court modify Ward's sentence. Such failure to object to the district court's reliance deprived the trial court of its opportunity to consider the validity of this argument and, therefore, potentially correct any errors.

13

Even so, Ward's reply to this argument may be a proper response to the State's argument. The State specifically argues that the district court had the legal authority to revoke his probation and impose his original sentence because "under K.S.A. 2016 Supp. 22-3716(c)(8)(A), the court may revoke probation without having previously imposed a sanction if the offender commits a new felony or misdemeanor while the offender is on probation." The State goes on to argue that the district court's action was not unreasonable because the court provided him opportunities when it granted a dispositional departure to probation and imposed a 120-day sanction after his first violations.

Yet, the State's argument does not address Ward's claim that the district court's refusal to modify his sentence was unreasonable, nor does the State address the district court's error of fact. In any event, the district court's error of fact does not necessarily require us to reverse the district court's decision. In this respect, we could also find Ward is improperly raising this argument for the first time in his reply brief because the substance of the State's briefing does not contend that the district court made no error of fact when it refused to modify Ward's sentence.

At the revocation hearing, Ward's defense counsel argued for modification because Ward had "certainly turned around." The district court was not persuaded and refused to modify Ward's sentence on the grounds that he agreed not to request modification in his plea agreement, he was given multiple opportunities on probation, and he was found in violation because he committed new crimes:

> "The defendant was given an opportunity, ultimately, that I wish he would have taken advantage of when he had the opportunity. He was placed back on probation in the 17 CR case and placed on probation on the departure in the 18 CR 2153 case.
> "In looking at the plea agreement that was reached between the parties at that time, subsection 5 on page 2 of that agreement, it states that in the event of a probation

14

violation in this case and 17 CR 1753, the defendant may not—may seek reinstatement, agrees not to seek any modification of his underlying sentence.

"I understand the Court has the ability to do that either way. The defendant, in negotiating that plea, was given an opportunity, again, to be on probation and did not take advantage of that initially, was found in violation previously, and found in violation for committing new criminal offenses.

"As such, the motion to modify sentence is denied."

Before the district court's disposition findings, the district court found that Ward violated the terms of his probation in case 18CR2153 based on the commission of new crimes, amongst other violations, including criminal possession of a firearm, possession of a controlled substance, possession of marijuana, and possession of drug paraphernalia. During discussions on disposition, the district court noted that Ward was "given two opportunities in this case for which you initially should have gone to prison for," and stated its "main concerns are the new offenses." After opining "these cases are hard," the district court imposed Ward's original sentence based on his commission of new crimes.

When viewed out of isolation, the district court's findings show that the district court did not rely on this particular error of fact for which Ward complains when it chose to impose Ward's original sentence. While the district court did err in finding Ward "committed the crimes in the instant case while being on probation in 17 CR 1753," the district court did not rely on this fact for imposing Ward's original sentence. Rather, the district court relied on Ward's newest commission of three drug crimes. Thus, the record shows that the district court did not rely on an error of fact when it chose to impose Ward's original sentence without modification on revoking his probation.

Returning to Ward's original argument on appeal, we note that the district court's decision to impose his original sentence was also reasonable. While some testimony supported Ward's position that he was succeeding on probation, and he presented logical defenses attempting to excuse his possession of drugs and a firearm, Ward cannot show

15

that the district court abused its discretion in imposing his original sentence. The three underlying crimes of conviction for case 18CR2153 were drug related. As noted earlier, the new crimes Ward committed while on probation for case 18CR2153 were also drug related.

Additionally, as the district court noted, Ward had two chances to successfully complete probation in case 18CR2153. The district court granted a dispositional departure to probation at sentencing and imposed a 120-day jail sanction on Ward's first probation violation. Despite these grants of probation, Ward committed the same drug-related offenses. It was not unreasonable for the district court to impose Ward's original sentence given his unsuccessful attempt at probation and history of drug convictions. The district court did not abuse its discretion in imposing Ward's original sentence on revoking his probation.

Affirmed in part, reversed in part, and remanded with directions.